REPUBLIC GUARANTY & SURETY CO. v. WM. CAMERON & CO., Inc., et al.

(Court of Civil Appeals of Texas. Texarkana. Jan. 3, 1912. Rehearing Denied Jan. 18, 1912.)

1. MECHANICS' LIENS (§ 313*)—BOND TO INDEMNIFY AGAINST LIENS—CONSTRUCTION.

Building contractors executed a bond to the owner, and "to all persons who may become entitled to liens under the contract hereinbefore mentioned," and recited that, if the contractors performed the contract and discharged all indebtedness incurred by them, and completed the work free from mechanics' liens, the obligation should be void, and that "this bond is made for the use and benefit of all persons who may become entitled to liens under said contract, according to the provisions of law, * * * and may be sued upon by them as if executed to them in proper person." The contract stipulated that the contractors should "by bond herewith annexed" stipulate to furnish the owner "a release from liens or rights of liens." Held, that the bond was intended to indemnify the owner against statutory liens, which persons dealing with the contractors with reference to the property might fix or have a right to fix against it and to permit such persons, as well as the owner, to sue on the bond.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 656; Dec. Dig. § 313.*]

2. HOMESTEAD (§ 161*)—"ABANDONMENT."

Removal from a homestead with a fixed intent not to return and use it as such constitutes an abandonment thereof, whether another homestead has been acquired or not.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 312–314; Dec. Dig. § 161.*

For other definitions, see Words and Phrases, vol. 1, pp. 4–13; vol. 8, p. 7559.]

3. HOMESTEAD (§ 55*)—WHAT CONSTITUTES.

If a building is erected to be occupied by the owner and his family as a homestead, and the owner and his family move into the house before it is completed and thereafter occupy it as a home, the property becomes a homestead from the inception of the contract for the construction of the building, and hence materialmen furnishing material to the contractors after the making of the contract can acquire no lien.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 77–80; Dec. Dig. § 55.*]

4. MECHANICS' LIENS (§ 73*)—MATERIALS.

Material furnished for the erection of a building on a homestead will not support a mechanic's lien, in the absence of a written contract for such materials signed by the owner and his wife, as required by Const. art. 16, § 50.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87–102; Dec. Dig. § 73.*]

5. HOMESTEAD (§ 192*)—PERSONS ENTITLED TO ASSERT.

A surety on a bond given by a building contractor to indemnify the owner against mechanics' liens may defeat recovery on the bond on the ground that the property was the homestead of the obligee in the bond, and that no valid liens could attach thereto except in the manner pointed out by the Constitution.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 363; Dec. Dig. § 192.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Suit by William Cameron & Company, Incorporated, against the Republic Guaranty & Surety Company and others, in which some of defendants filed a cross-action. From a judgment for plaintiff and for defendants on the cross-action, as stated, the defendant named appeals. Judgment against appellant reversed and rendered in part, and in other respects judgment is affirmed.

The suit was by appellee Wm. Cameron & Co., Inc., against appellant and appellees J. W. Cantwell, Thomas M. Heck, Jonas E. Ulander, J. D. Buckley, and Harry Buckley. It appears from the record that on July 26, 1909, Heck and Ulander, as partners, by a contract in writing, undertook to furnish the material therefor and to build and complete for Cantwell, on or before November 1, 1909, and in accordance with an architect's plans, etc., made a part of the contract, on land not

specified, a two-story dwelling house, for which Cantwell was to pay them the sum of $3,474. The $3,474 was to be paid in parts, as the work on the house progressed; the parts to depend on estimates of the material furnished and work done, to be made weekly by the supervising architect, but 20 per cent. thereof was to be held by Cantwell, "as security," it was recited, "for the faithful completion of the work, and may be applied, under the direction of the superintendent, in the liquidation of any damages under this contract." The contract contained other stipulations which it is not thought necessary here to mention.

At the time Heck & Ulander entered into the contract, they made and delivered to Cantwell a bond, executed by appellant as a surety, as follows:

"Know all men by these presents: That we, Heck & Ulander and ———, of the city of Ft. Worth, county of Tarrant, state of Texas, are held and firmly bound unto J. W. Cantwell, of said county and state, as well as to all persons who may become entitled to liens under the contract hereinbefore mentioned, in the sum of nineteen hundred dollars, lawful money of the United States of America, to be paid to the said J. W. Cantwell, and to said parties who may be entitled to liens, their executors, administrators, or assigns, for which payment, well and truly to be made, we bind ourselves, our and each of our heirs, executors, and administrators, jointly and severally, firmly by these presents. Sealed with our seals, dated this 26th day of July, 1909. The condition of this obligation is such that if the above-bounden Heck & Ulander, his executors, administrators, or assigns, shall in all things stand to and abide by, and well and truly keep and perform the covenants, conditions, and agreements in above-mentioned contract, entered into by and between the said Heck & Ulander and the said J. W. Cantwell, dated on the 20th day of July, 1909, for the construction of the work or works on the lot mentioned in the foregoing contract, and shall duly and promptly pay and discharge all indebtedness that may be incurred by the said Heck & Ulander, in carrying out the said contract, and complete the same, free of all mechanic's lien, and shall truly keep and perform the covenants, conditions, and agreements in said contract and in the within instrument contained, on his part to be kept and performed, at the time and in the manner and form therein specified, as well as all costs, including attorney's fees, in enforcing the payment and collection of any and all indebtedness incurred by said Heck & Ulander in carrying out the said contract, then the above obligation shall be void; else to remain in full force and virtue. This bond is made for the use and benefit of all persons who may become entitled to liens under the said contract, according to the provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person."

On and between August 19, 1909, and December 15, 1909, Wm. Cameron & Co., Inc., furnished Heck & Ulander, and they used in building the house, material of the value of $1,469.95, for which they never paid.

On and between October 12, 1909, and January 1, 1910, it seems, the Buckleys, as partners under the name of Buckley & Son, furnished said Heck & Ulander, and the latter used in constructing the house, material of the value of $358.95. During November, 1909, Heck & Ulander paid them sums aggregating $175, leaving unpaid on the material furnished the sum of $183.95.

Cameron & Co., Inc., and Buckley & Son, to secure the sums respectively due them, each claimed to have taken all the steps required of them by the statute to fix liens as materialmen on land, shown to be lot 13, block 14, of the Bellevue Hill addition to Ft. Worth. The conclusion having been reached by the court that they were not entitled to claim liens against the property because it was Cantwell's homestead, it is of no importance whether the steps taken constituted a compliance with the statute or not. Therefore they will not be stated.

Said Cameron & Co., Inc., by their suit sought a recovery as against appellant and Heck & Ulander of said sum of $1,469.95 due them, and a foreclosure of the materialmen's lien they claimed, as against Cantwell and the Buckleys.

Heck & Ulander answered the suit by general denials.

Buckley & Son answered by a general denial, and by a cross-action sought as against Heck & Ulander and the surety company of the balance of $183.95 due them, and as against the other parties a foreclosure of the materialmen's lien they claimed they had acquired.

Cantwell answered admitting, in effect, the allegations in the petition of Cameron & Co. and the allegations of Buckley & Son in their cross-action to be true, and by a cross-action against Heck & Ulander and appellant sought a recovery against them, for the use and benefit of Cameron & Co. and Buckley & Son, of the amount of their claims, less the sum of $676, which he alleged was the "balance of the contract price for said dwelling house, still in" his hands. On the trial it was determined that he was entitled to credits reducing the sum due by him to Heck & Ulander on the contract to the sum of $587.50, which sum he paid into court.

Appellant answered by exceptions, general and special, to the plaintiff's petition and to the answers of Buckley & Son and Cantwell, by a general denial of the allegations in those pleadings, and specially that "the property on which the building covered by said contract was erected was and is the homestead of the defendant J. W. Cantwell and was the homestead of said J. W. Cantwell

on the 19th day of January, 1910, and for some weeks prior thereto, and that as said homestead was not subject to the fixing of a mechanic's lien, said J. W. Cantwell being a head of a family and entitled to exemptions against mechanics' liens under the Constitution and statutes of the state of Texas." By its pleadings appellant sought, in the event Cameron & Co. and Buckley & Son recovered against it, a judgment over against Cantwell for the balance in his hands of the contract price unpaid, and for a judgment over against Heck & Ulander for any sum which might be recovered against it by Cameron & Co. and Buckley & Son.

A trial before the court without a jury resulted in a judgment as follows: In favor of Cameron & Co., Inc., and Buckley & Son, for the sums they respectively sued for, against Heck & Ulander and appellant; in favor of Cantwell, for the use and benefit of Cameron & Co., Inc., and Buckley & Son, for the sum of $1,639.70, being the aggregate of the sums found to be due said Cameron & Co., Inc., and said Buckley & Son; in favor of appellant against Heck & Ulander for the sum of $1,639.70; in favor of all the other parties to the suit against Cantwell for the sum of $587.50, that being the balance due by him on his contract with Heck & Ulander, and it appearing that he had paid said sum into court, it was ordered that Cantwell go without day, and that the mechanic's and materialmen's liens filed and claimed by Cameron & Co. and Buckley & Son as against the land on which the house had been constructed be "released, fully satisfied and discharged, and of no further force and effect." The judgment directed that the sum paid by Cantwell into court be paid out by the clerk to Cameron & Co., Inc., and Buckley & Son "in the respective proportions of the judgments" in their favor, and that the payments so made should operate as a credit upon such judgments, as well as a credit for the total of said sum so paid into court in favor of Heck & Ulander against all the other parties given judgments against them.

The appeal is by the Republic Guaranty & Surety Company alone.

Gossett & Shearon, for appellant. H. O. Ledgerwood, Theodore Mack, J. W. Stitt, and Chambers & Black, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] There is language in the bond which, if considered alone, would indicate an intent of the parties thereby to secure the payment of any and all indebtedness, without reference to whether it was in favor of parties entitled to fix liens on the property or not, which might be incurred by Heck & Ulander in carrying out their contract to construct the house. But we do not think this language should be permitted to control in the interpretation of the bond, for other language in the instrument clearly indicates that such was not the intention of the parties. The obligation of the bond, it will be noted, was to Cantwell and "to all persons who may become entitled to liens under" his (Cantwell's) contract with Heck & Ulander, and not to persons generally, to whom Heck & Ulander might become indebted in complying with their contract. And it also will be noted that the bond concludes with a declaration as to its purpose inconsistent with an intent to have it inure to the benefit of any creditors of Heck & Ulander other than those who might become entitled to liens on the property. The declaration referred to is as follows: "This bond is made for the use and benefit of all persons who may become entitled to liens under said contract, according to the provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person." When these parts of the bond are kept in mind, the only reasonable construction which can be given it, we think, is that it was intended to indemnify Cantwell against statutory liens which parties dealing with Heck & Ulander in connection with the construction of the building might fix, or have a right to fix, against the property, and as more directly accomplishing this than it otherwise could be accomplished, to permit such parties, as well as Cantwell, to sue on the bond. The making of the bond was contemplated by Cantwell and Heck & Ulander at the time they entered into the contract covering the construction of the house, as was shown by a stipulation in that contract requiring Heck & Ulander, "by bond herewith annexed," to furnish to Cantwell "a release from liens or rights of liens." This stipulation in the contract, showing that the bond contemplated was one which would protect Cantwell against "liens or rights of liens," is entitled to be considered in determining the meaning of the bond actually made, and we think adds to the weight of the language in the bond which we think should be held to control in construing its meaning.

So construing the bond, the questions arising on the face of the record are: (1) Had Cameron & Co., Inc., and Buckley & Son, or either of them, acquired "liens or rights of liens" on the property? (2) If they had, were they entitled to sue on the bond? (3) If they were not, was Cantwell entitled to sue on it for their use and benefit?

The trial court found "that at the date," quoting from his findings, "of the contract between Cantwell and Heck & Ulander, the property on which the house was to be constructed was not the homestead of J. W. Cantwell; no clear abandonment of the homestead at Corsicana being shown, * * * and no preparation having been made to make the property in question a home at the date of the contract." The finding is attacked as erroneous, because not supported by the testimony.

[2] Removal from a homestead with a fixed intent never again to return to and use it as such constitutes an abandonment thereof, without reference to whether another homestead has been acquired or not. Woolfolk v. Ricketts, 41 Tex. 362; Cline v. Upton, 56 Tex. 322; Shepherd v. Cassidy, 20 Tex. 29, 70 Am. Dec. 372; Gouhenant v. Cockrell, 20 Tex. 96. On the trial below it was agreed that the removal of Cantwell and his family to Ft. Worth was a permanent removal and without intent ever to return to Corsicana to live. It would seem, therefore, that the finding of the court that the Corsicana homestead had not been abandoned by Cantwell was against the admission of the parties that it had been.

That the conclusion of the court in that respect was erroneous would not, however, establish that his conclusion that the lot was not homestead at the time contract was entered into between Cantwell and Heck & Ulander also was erroneous; for, as stated above, Cantwell need not have acquired another homestead before his abandonment of the old one could become effectual.

[3] There is nothing in the record, other than may be evidenced by the contract itself, showing or tending to show that, prior to the time he entered into the contract with Heck & Ulander, Cantwell had an intention to make the property his homestead; but it was agreed by the parties, on the trial below, that that contract was made by Cantwell "for the purpose of building and erecting a homestead for himself and family." It was further agreed that, on December 16th following, Cantwell and his family moved into the house, then incomplete, and thereafterwards with his family occupied it as a home. It thus clearly appeared that the property became Cantwell's homestead, and we think it must be held to have become so at the time he entered into the contract with Heck & Ulander on July 26th, and therefore that the finding of the trial court to the contrary was erroneous. West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 50. In the case just cited the Supreme Court said: "The purpose of Grigg and wife to establish their homestead upon the lots at some future time, if able to erect a residence upon it, did not make it a homestead, but the making of the contract under which that residence was built, concurring with the intent to occupy it, fixed the homestead right from that time."

[4] The material on account of which Cameron & Co. claimed a lien was furnished to Heck & Ulander on and between August 19 and December 15, 1909; and the material on account of which Buckley & Son claimed a lien was furnished to Heck & Ulander on and between October 12, 1909, and January 1, 1910. At all those times the property against which the liens were claimed was Cantwell's homestead. Because it was then homestead, the liens were invalid. Valid liens against the property, covering the material so furnished, could have been created in no other way than by a contract in writing, consented to by Cantwell's wife, "given in the same manner as is required in making a sale and conveyance of the homestead." Const. art. 16, § 50.

We do not think any of the authorities cited by appellee hold to the contrary of the conclusion we have reached.

Pope v. Graham, 44 Tex. 198, seems to be the case most confidently relied upon. There Graham undertook to build a house for Pope. After the completion of the house, the latter gave his note to the former for a balance unpaid of the contract price due him. The note on its face recited the existence in Graham's favor of a mechanic's lien on the property to secure its payment. When Graham sought to enforce the lien he claimed against the property, Pope sought to defeat same by interposing the homestead right of his wife, who, it was claimed, was the equitable owner of the ground on which the improvement was made. On appeal a judgment in Graham's favor foreclosing the lien as asserted by him was affirmed. After stating that there could be no question that Graham had a mechanic's lien on the property so far as it was competent for Pope to give or create such a lien, the court said: "The homestead right of Pope could not attach to the house so erected so as to defeat this lien." In distinguishing the Graham Case from one afterwards before them (Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832), with the ruling in which the Supreme Court said the ruling in the Graham Case "on first reading would seem to be to some extent in conflict," the court said the opinion in the Graham Case "was evidently based upon the conclusion that the homestead right was not asserted until after the contract for building was made." Another, and it seems to us entirely satisfactory, reason for the ruling made in the Graham Case lies in the fact that, under the Constitution and laws in force when the rights of the parties thereto arose, a lien could be acquired on a homestead for material furnished to construct or repair buildings on it, without reference to the consent of the wife. Const. 1869, art. 12, § 15; 2 Paschal's Laws of Texas, arts. 7112, 7115. As the law then was, a lien for material for such improvements could be fixed on the homestead in the same way it could be fixed on any other land. This being true, the ruling made cannot, we think, be regarded as of value here.

In Swope v. Stantzenberger, 59 Tex. 387, another case cited by appellees, Stantzenberger sought to foreclose a mechanic's lien he claimed on land on which he had built a house for Swope, and which the latter claimed as a homestead. The work was done under a verbal agreement between Swope and Stantzenberger; but the latter claimed he had fixed a lien by complying with the statute authorizing him to do so. It appeared that at the time the contract was made the

land was wild and unimproved, that Swope had never lived upon or occupied it, that he was then living upon other land, but whether owned by him or not did not appear, that he told Stantzenberger he did not know whether he would live in the house he was having built or not, but that when he heard from his friends he would then probably want a larger house built, and to use the one contracted for as a kitchen. It further appeared that, while nothing whatever had been done towards improving the land at the time contract was made, when Stantzenberger went on it to commence building the house, he found a man there digging holes for posts. The court held that the evidence did not show such acts of preparation at the time of and before the contract was made as to impress upon the land the homestead character, and that it did not appear that Swope then had a "definite and fixed intention to make the property his homestead," even if such preparation had been made. The Supreme Court affirmed a judgment foreclosing the lien as claimed. Having found that it did not appear at the time the contract was made that it was Swope's intention to make the land his homestead, the conclusion that the lien properly was foreclosed followed. The court said: "Whatever may be the rule as between the mechanic and creditors of the owner as to the time when the lien commences, as between the owner and the mechanic, in the determination of the question whether the land was or was not the homestead, so as to exempt it from the operation of the lien, unless the wife should join in the execution of the written contract, it would seem that the time of the making of the contract is the true criterion. If at that time it was not the homestead of the owner, then no subsequent act of his could have the effect of abrogating and destroying his contracts." The theory upon which the ruling was made evidently was that, it not appearing that Swope at the time he made the contract intended to use the land as homestead, the contract for the improvements was not entitled to be considered as evidence showing its character as homestead; and that, as the land was not then homestead, it could not become so by an intent afterwards formed and preparations made to make it homestead. For the court further said: "Nor is there any good reason for holding that under the contract, and in the performance of the same, the mechanic must carry lumber upon the land, and then commence and complete the building; that there being acts evidencing, and actual and tangible improvements, when accompanied with the requisite intent, are sufficient to fix its character as the homestead. And as these things (that is, the carrying of the material upon the land and the performing of the labor) are contemplated by the contract, they relate back to the execution. The contract is made with reference to the then existing condition of affairs. There is neither justice nor reason in the proposition that in such case the performance of the contract by the mechanic will itself work a total destruction of his rights under it." We do not understand the court to have decided that the lien as claimed would have been valid had it appeared that Swope, when he made the contract with Stantzenberger, intended to use the land as his home and for that purpose, within Stantzenberger's knowledge, was having the house built. On the contrary, we understand the decision to have been that, it not appearing that Swope at the time he made the contract intended to use the land as homestead, the making of the contract could not be regarded as preparation to so use it, and Stantzenberger's rights, having then accrued, could not be affected by an intention afterwards formed by Swope to make the land his homestead. The ruling might be entitled to weight if Heck & Ulander, instead of Cameron & Co. and Buckley & Son, were here seeking to enforce a lien they claimed to have acquired against the property as the original contractors for the construction of the house. But we are not called upon to determine what the rights of Heck & Ulander were as against the property. Cameron v. Gebhard, supra.

In West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 49, another case relied upon by appellees, it appeared that Grigg and wife purchased unimproved lots for the purpose of a home, that they applied to the Town Company for a loan to enable them to erect a dwelling on the lots, and were informed by the company that it could not make the loan; that afterwards the company agreed, if Grigg and wife would convey the lots to it, it would have the dwelling erected thereon and then reconvey the lots to Grigg and wife for the cost of the dwelling, retaining a vendor's lien thereon to secure the repayment of the cost; that the lots, accordingly, were conveyed by Grigg and wife to the company in consideration of its undertaking to erect the dwelling thereon; that at the time this conveyance was made Grigg and wife, with the consent of the company, contracted with one Hardy to build the house, the contract price to be paid by the company; that at the same time, as a part of the same transaction, the company reconveyed the lots to Grigg and wife, the consideration being the notes sued upon; that the house was built by Hardy as agreed upon; and that he was paid for same by the company. The trial court refused to foreclose the vendor's lien in favor of the company, on the ground that the lots were homestead of Grigg and wife. The Supreme Court reversed the judgment and rendered a judgment foreclosing the lien. The court said: "The purpose of Grigg and wife to establish their homestead upon the lots

at some future time, if able to erect a residence upon it, did not make it a homestead, but the making of the contract under which that residence was built, concurring with the intent to occupy it, fixed the homestead right from that time"—citing Swope v. Stantzenberger, supra. The court further said: "The agreement between Grigg and the builder for the erection of a residence upon the lots in question, with the notes of Grigg and wife to the West End Town Company for the price of the work, formed a contract for the improvement, and the conveyance of the lots by Grigg and wife to the plaintiff in error and the reconveyance to them constituted a mortgage to secure the notes. The instruments were all executed at the same time, and, when the contract for the building became binding, the lien of the mortgage to secure the notes became effective and attached to the lots in question. No homestead existed prior to the last act by which the transaction was completed; but, the intention to occupy continuing with Grigg and wife, the constitutional immunity from debts then arose in their favor as to future transactions, but did not invalidate the lien which had attached to the lots. The effect of the judgment in this case is to hold that, when the contract and mortgage took effect, therefrom arose a right in Grigg and wife which destroyed the lien that secured the notes. In other words, the negotiation was self-destructive, for by its completion it destroyed the lien upon which it rested. Such a proposition cannot be sustained consistently with the uniform holding of this court that a pre-existing lien is not affected by the subsequent acquisition of a homestead right in the property." It will be observed that the holding that the lien as claimed was valid was placed upon the ground that it attached to the lots before they became homestead. It is clear such was not the situation in the case before us. It did not appear that Heck & Ulander ever took the steps required by law to fix a lien in their favor, and not until August 19th, after the contract between them and Cantwell was made July 26th, did either Cameron & Co. or Buckley & Son furnish any of the material on account of which they asserted their respective liens. The difference between the two cases is a marked one, and lies in the fact that in the Grigg Case the Town Company acquired a lien on the property before it became homestead, while the liens here asserted by Cameron & Co. and Buckley & Son were created, if at all, after the property became homestead.

Cameron v. Gebhard, referred to above, in some respects was more like this case. There it appeared that Mrs. Gebhard, owning in her own separate right a lot used by herself and husband as a homestead, sold it and with a part of the proceeds purchased another lot, intending to make same their homestead. On the lot so purchased Turntine undertook, under a contract made with Gebhard alone, to build a dwelling house, and to furnish the material therefor, for Gebhard and wife. Turntine being unable to purchase the material he needed, Gebhard contracted with Cameron to furnish same to him. Cameron knew that the material he furnished to Turntine at the instance of Gebhard was to be used in building the house, and that Gebhard and wife intended to make same their homestead. At the time Gebhard entered into the contract with Turntine, the lot was unimproved, and Gebhard had taken no steps to establish his homestead on it other than making the contract. Cameron, claiming a lien against the property to secure payment for the material furnished to Turntine, took the steps required by the statute to fix such a lien. In affirming a judgment denying the existence of the lien claimed, the Supreme Court said: "The only question presented for our consideration in this case is: Was the lot in question the homestead of defendants at the time that the contract for the purchase of the lumber from plaintiffs was made? If it was not, the judgment should be reversed. If it was a homestead at that time, the judgment should be affirmed. Upon the facts presented in this case, we hold that the homestead right in favor of the defendants had attached to the lot sought to be subjected to the lien asserted before the contract for the purchase of the lumber was made, and that, plaintiffs in error having failed to make a contract in writing, signed and acknowledged as required by law, no lien was created upon the lot. It is not necessary that we should, in this case, decide whether or not Turntine acquired a lien, or could, without writing, have fixed a lien on the lot." We think it as clearly appeared in this case as it did in that one that the homestead right had attached before the contracts for the furnishing of the material were made. Even if the right of Cameron & Co. and Buckley & Son to fix liens as claimed by them could be referred to stipulations in the bond sued upon, and be said to have arisen then, it nevertheless would appear that the property was homestead when their rights accrued; for Cantwell's contract with Heck & Ulander for the construction of the house, for the purposes of a homestead, it was agreed, had then been made, and the property thereupon, before the bond was made and became operative, we think, had become homestead.

[5] Appellees insist that the right to assert the homestead exemption is personal to the owner, and therefore that appellant should not be heard to say that the property was exempt as the homestead of Cantwell. Whether the right is a personal one, as claimed, or not (12 A. & E. Ency. Law, 111), need not be determined. Appellant was not asserting such exemption on behalf of the owner to prevent a foreclosure of the

liens claimed. It was asserting that, because the property was homestead, the liens claimed never existed. We have determined that in no event could a liability exist in favor of either Cameron & Co., Inc., or Buckley & Son, unless they had acquired valid liens against the property. To be entitled, in any event, to recover as they sought to against appellant, they must have established that they had such liens. This being true, certainly it was competent for appellant to assert and show they had not acquired the liens claimed. In doing so appellant would not be in the attitude of endeavoring to defeat, on the ground that it was homestead, the enforcement of a lien claimed against the property. That was a matter about which it was not in any way concerned. But it was concerned when the effort was to make it liable as a surety on the bond on the ground that, in accordance with its terms, valid liens or rights to such liens had accrued against the property. Asserting and showing that no such liens had been created, and therefore that it was not liable on the bond, was quite a different thing from asserting an exemption in favor of the owner of the property, to protect it from the enforcement of liens claimed.

Having reached the conclusion that neither Cameron & Co., Inc., nor Buckley & Son had acquired "liens or rights of liens" on the property, because it was Cantwell's homestead at the time their rights accrued, it is unnecessary to determine, and we do not determine, whether, had they acquired valid liens, they or Cantwell for their use and benefit might have maintained a suit on the bond.

So far as the judgment of the trial court was against appellant in favor of the other parties, and so far as it was in its favor for the sum of $1,639.70, it will be reversed, and judgment will be here rendered that none of the parties take anything against appellant, that it take nothing as against Heck & Ulander except its costs, and that it recover its costs as against said Heck & Ulander and the other parties. In all other respects the judgment of the lower court will be affirmed.