TEXAS GLASS & PAINT CO. et al. v. SOUTHWESTERN IRON CO. et al.

(Court of Civil Appeals of Texas. Texarkana. April 4, 1912. On Motion for Reing, May 23, 1912.)

1. MECHANICS' LIENS (§ 113*) — NOTICE TO OWNER—MATERIALMEN.

A materialman, who does not give to the owner the notice in writing required by Rev. St. 1895, art. 3296, does not acquire any lien, especially where the owner has accepted an order from the contractor in favor of another materialman for the balance due on the contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 148; Dec. Dig. § 113.*]

2. MECHANICS' LIENS (§ 113*) — NOTICE TO OWNER—MATERIALMEN.

The provision in Rev. St. 1895, art. 3296, for notice in writing to the owner by one claiming a lien, applies to all liens, whether given by the Constitution or by statute, when the materials are furnished to the contractor and not to the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 148; Dec. Dig. § 113.*]

3. CONTRACTS (§ 147*) — CONSTRUCTION — INTENTION OF PARTIES.

The court in construing a contract must ascertain and give effect to the real intent of the parties, and where the language of the instrument makes the intent doubtful, the court may look to the surroundings of the parties at the time and the purpose sought to be accomplished.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

4. MECHANICS' LIENS (§ 315*) — BUILDING CONTRACTS—BONDS—LIABILITY.

A bond given by a contractor to erect a building on land not a homestead, conditioned on his performing the contract and paying all indebtedness and completing the building free of liens, and payable to the owner and to lienholders, and providing that it is made for the use of all persons who may become entitled to liens according to law, when construed with the building contract stipulating that a part of the price shall be retained as security for the completion of the work and in liquidation of any damages, is given to protect the owner and lienholders, and one not a lienholder may not sue thereon.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 793, 794; Dec. Dig. § 315.*]

5. MECHANICS' LIENS (§ 114*)—ASSIGNMENT—ACCEPTANCE—EFFECT.

Where a contractor assigned to a materialman the balance due under the contract, and the owner accepted the assignment, the ownership of the balance passed to the materialman, and nothing remained to which subsequent liens could attach.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 149; Dec. Dig. § 114.*]

On Motion for Rehearing.

6. MECHANICS' LIENS (§ 264*)—ACTIONS—PAYMENT BY OWNER OF BALANCE DUE ON CONTRACT—EFFECT.

Where, in an action by a materialman against the contractor, his surety, and the owner, another materialman intervened, and the owner paid into court the balance found to be due on the contract price, and the same was by agreement substituted for the owner, the claimants to participate in the distribution of the fund must show valid liens against the property of the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 482–486; Dec. Dig. § 264.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by the Southwestern Iron Company against J. D. Turner and another, in which the Texas Glass & Paint Company intervened and asked for relief similar to the relief demanded by plaintiff. From a judgment granting relief to plaintiff and intervener, defendant the Adams-Simpson Lumber Company and the intervener appeal, and plaintiff assigns cross-assignments. Affirmed in part and reformed and affirmed in part.

Meador, Davis & Dedmon, F. H. Haddix, and Dedmon, Davis & Potter; all of Ft. Worth, for appellants. Bryan & Spoonts, of Ft. Worth, for appellees.

HODGES, J. On December 10, 1909, J. D. Turner entered into a written contract by which he agreed to furnish the material and construct for J. C. Crowdus a two-story brick building in the city of Ft. Worth. The consideration was $8,905, to be paid as the work progressed on certificates of the supervising architect. Contemporaneously with the making of this contract, Turner, with the appellant Adams-Simpson Lumber Company as the surety thereon, executed the following bond: "Know all men by these presents: That we, J. D. Turner and Adams-Simpson Lumber Company, of the city of Ft. Worth, county of Tarrant, and state of Texas, are held and firmly bound unto J. C. Crowdus of said county and state, as well as to all persons who may become entitled to liens under the contract hereinbefore mentioned, in the sum of $4,452.50, lawful money of the United States of America, to be paid to the said J. C. Crowdus, and to said parties who may be entitled to liens, their executors and administrators, or assigns, for which payment, well and truly to be made, we bind ourselves, one and each of our heirs, executors and administrators,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

jointly and severally firmly by these presents. Sealed with our seals, dated this 10th day of December, 1909.   The condition of this obligation is such that if the above bounden J. D. Turner, his executors, administrators, or assigns, shall in all things stand to and abide by, and well and truly keep and perform the covenants, conditions and agreements in the above-mentioned contract, entered into by and between the said J. D. Turner and the said J. C. Crowdus, dated on the 10th of December, 1909, for the construction of work or works on the lot mentioned on the foregoing contract, and shall duly and promptly pay and discharge all indebtedness that may be incurred by the said J. D. Turner in carrying out the said contract, and complete the same free of all mechanics' liens and shall truly keep and perform the covenants and agreements in said contract and in the within instrument contained, on his part to be kept and performed, at the time and in the manner and form therein specified, as well as all costs, including attorney's fees, in enforcing the payment and collection of any and all indebtedness incurred by the said J. D. Turner in carrying out the said contract, then the above obligation shall be void, else to remain in full force and effect.   This bond is made for the use and benefit of all persons who may become entitled to liens under the said contract, according to the provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person."

Turner began the construction of the building, and on January 4, 1910, purchased of the appellee Southwestern Iron Company (which will be hereinafter referred to simply as the Iron Company) a quantity of material, aggregating in value the sum of $536. This material was delivered to Turner about the 1st of February following.   The sale was evidenced by a written contract, in which no date of payment was mentioned.   Parol evidence was admitted over objection showing that it was agreed that payment was to be made in 30 and 60 days after delivery.   On May 26, 1910, the Iron Company, with a view of fixing a lien upon the building being erected by Turner, filed with the county clerk of Tarrant county its written contract, together with an itemized statement of the material sold.   During the progress of the building, and prior to March, 1910, appellant Adams-Simpson Lumber Company (which will hereinafter be referred to simply as the Lumber Company) also furnished Turner material to be used in the construction of the building. On March 12, 1910, Turner was indebted to the Lumber Company for such material in a sum exceeding $1,100, and on that date made a written assignment to the Lumber Company of all that might thereafter be due to him from Crowdus under the contract for completing the building.   An order from Turner to pay over that balance to

the Lumber Company was attached to the assignment, and was presented to and accepted by the duly authorized agent of Crowdus.   On February 2, 1910, the Texas Glass & Paint Company (which will hereinafter be referred to as the Glass Company) sold and delivered to Turner material to be used in the erection of the Crowdus building, aggregating in value $308.76, to be paid for on delivery.   The last-named creditor never attempted to fix any lien by filing its account with the county clerk as required by statute.   Upon the completion of the building by Turner, there was due of the contract price the sum of $1,086.15; but the claims of the three creditors mentioned were unpaid.   The Iron Company began this suit against Turner, the Adams-Simpson Lumber Company, and Crowdus in July, 1910. In the amended petition thereafter filed it sought a judgment for the full amount of its debt and $100 as attorney's fees, the foreclosure of its lien against the building and lot upon which it was erected, and a personal judgment against the Lumber Company.   Some time later the Glass Company intervened, setting up its claim for the material which had been furnished Turner by it to be used in the erection of the building, and asked for similar relief to the extent of its debt.   The Lumber Company answered by exceptions and denials, and also filed a cross-bill containing two counts.   In the first count it pleads the assignment from Turner transferring to it the balance due on the contract, and asks judgment against Crowdus for that sum.   In the second it sets up the contract by which it furnished material aggregating the sum of $1,841.25 that entered into the construction of the Crowdus building, and alleges compliance with the statute in fixing its lien.   It also claimed by assignment an account amounting to $294.-77 for material furnished by other parties and which it alleged was secured by a lien on the building.   Upon these claims it asked for judgment against Turner, and a foreclosure of its lien against the building and lot.   Later during the progress of the cause Crowdus was permitted by agreement among the parties to pay the balance due on the contract price, $1,086.15, into court and be discharged from any further liability.   The case was tried before the court without a jury.

After finding the facts substantially as hereinbefore stated, the court made the following legal conclusions:   "I conclude from the foregoing that the Southwestern Iron Company is entitled to judgment against the said Turner for $536 with 6 per cent. interest from March 28, 1910, and also $50 as attorney's fees, in addition.   I conclude:   That the said Southwestern Iron Company is entitled to have judgment for one-half of said sum, to wit, $268, with 6 per cent. interest from March 28, 1910, and the said $50 attorney's fees out of said $1,-

086.15 deposited by defendant Crowdus in the registry of this court; and that the said Iron Company is entitled to have judgment on the said bond against the said Adams-Simpson Lumber Company, for such amount as the said bond is valid and binding against the said Adams-Simpson Lumber Company, as it is held in law to have received a consideration for the signing of the bond, and as there is a general custom for the signing of such bonds by companies furnishing the material, in Ft. Worth and elsewhere. That the Texas Glass & Paint Company is not entitled to participate in the distribution of said sum of $1,086.15, but that it have judgment against the said Turner only for the amount of its debt, to wit, $308.76, with 6 per cent. interest from this date. That after payment of said $268 with 6' per cent. interest from March 28th, 1910, and said $50 attorney's fee, that the said Adams-Simpson Lumber Company have judgment for the balance, to wit, $757.-03, by reason of the assignment from J. D. Turner. That the Texas Glass & Paint Company is not entitled to a foreclosure of a materialman's or mechanic's lien on the lot and building in controversy. That the said Texas Glass & Paint Company is not entitled to an attorney's fee against said J. D. Turner and the surety on his bond, the Adams-Simpson Lumber Company." Judgment was rendered in accordance with those conclusions. Both the Lumber Company and the Glass Company have appealed, and the Iron Company has also filed some cross-assignments complaining of the refusal of the court to render judgment for the full amount of its claim and attorney's fees. The Glass Company and the Iron Company each insists that it holds liens against the building, which, if not fixed by compliance with the statutory requirements, are nevertheless protected by the provisions of the Constitution. Each also separately contends that it is entitled to a judgment for the full amount of its debt against Turner and the Lumber Company on the bond hereinbefore mentioned, regardless of whether or not it was the holder of an enforceable lien at the time its suit was filed. These contentions present the controlling issues of law to be determined on this appeal.

[1] The first question which we shall consider is: Was either of the parties (the Iron Company and the Glass Company), or both of them, at the time their respective suits were instituted, entitled to assert the liens claimed against the building which Turner had erected for Crowdus, and for the construction of which they had furnished some of the material? The lien given in the Constitution to materialmen, mechanics, and artisans is substantially repeated in article 3294 of the Revised Civil Statutes, in which are included some other provisions not involved in this controversy. Article 3296 contains the following provision: "Any person,

firm or corporation who may furnish any material to any contractor, subcontractor, agent or receiver, to be used in the erection of any house, building or improvement, or to repair any house, building or improvement, or to construct or repair any railroad or its properties, by giving written notice to the owner or his agent of such house, building or improvement, or the railroad company, its agent or receiver, of each and every item furnished, and by showing how much there is due and unpaid on each bill of lumber or material furnished by said lumberman, corporation or materialman under said contract, at any time within ninety days after the indebtedness shall have accrued, may fix and secure the lien provided for in this chapter as to the material furnished at the time or subsequent to the giving of the written notice above provided for, by filing in the office of the county clerk of the county in which such property is situated, and if it be a railroad company in any county through which its road may pass, an itemized account of his or their claim, as provided in this article, and cause the same to be recorded in a book kept by the county clerk for that purpose; provided, that in no case shall the owner be compelled to pay a greater sum for (or) on account of labor performed or material, machinery, fixtures and tools furnished as provided in this chapter than the price or sum stipulated in the original contract between such owner and the original contractor or builder of such house, building, fixtures, improvements or repairs." The testimony shows that the Glass Company wholly failed to comply with any of the requirements of this article of the statute. There is sufficient evidence to show that the Iron Company filed its contract and itemized account in the office of the county clerk within 90 days after the accrual of its debt. But it failed to give to Crowdus, or his agent, the written notice required, at any time prior to the filing of its suit. The agent of Crowdus who was supervising the construction of the building had verbal notice of the material being furnished at the time it was delivered. In Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112, the Supreme Court has definitely decided that, where material is furnished to the contractor by one who is seeking to fix a lien on the property, the written notice required by the statute cannot be dispensed with.

[2] This requirement applies to all liens, whether given by the Constitution or by statute, when the material is furnished to the contractor and not the owner. The property of the owner cannot be burdened with a lien to secure a debt which he did not contract, except by following the method prescribed by the statute. His liability is similar to that of a garnishee after the service of the writ, and the lien on his property is merely to secure the liability so fixed and

no more. Lonergan v. Trust Co., 101 Tex. 80, 104 S. W. 1061, 106 S. W. 876, 130 Am. St. Rep. 803. Under the facts of this case, it cannot be said that notice to Crowdus was unimportant. On March 12, 1910, his agent accepted an order from Turner drawn in favor of the Lumber Company for the full amount of the balance due on the contract price. That company was at the time a creditor who had furnished a portion of the material that entered into the construction of the building, and its claim exceeded the balance still due from Crowdus to Turner upon the contract price. We conclude that neither the Iron Company nor the Glass Company had any lien enforceable against the building, and therefore had no right to participate in the distribution of the balance of the contract price which has been paid into court by Crowdus.

The next question is: Was either or both of these parties entitled to recover a judgment upon the bond filed by Turner and on which the Lumber Company was surety? It will be observed that this instrument is made payable to Crowdus, "as well as to all persons who may become entitled to liens under the contract hereinbefore mentioned." It also recites in the concluding paragraph that it is made "for the use and benefit of all persons who may become entitled to liens under the said contract according to the provisions of law in such cases made and provided, and may be sued on by them as if executed to them in proper person." The bond has two conditions. One is that Turner shall keep and perform the covenants, conditions, and agreements mentioned in the building contract. That means to erect the building according to the specifications. The other is to discharge all indebtedness incurred in carrying out the building contract and complete the same free of all mechanics' liens. That means to deliver the building free of liens.

[3] The real intent of the parties is the end that should be kept in view in construing all contracts. In searching for this intent, where the language of the instrument itself makes it doubtful, it is proper to look to the surroundings of the parties at the time and the purpose sought to be accomplished.

[4] At the time this bond was executed, Crowdus was making a contract with Turner for the erection of a building on a lot not protected by any homestead rights. This entire property might, under the laws of this state, become incumbered with liens for labor and material used in the construction of the building, and which might result in expensive and annoying litigation, with the possibility of Crowdus being compelled to expend more money than he had contracted to pay. Evidently the bond was taken by Crowdus for his own protection, not only as security for any damages which he might

sustain by reason of the failure of Turner to complete the building according to the specifications embraced in the contract, but to secure its delivery free from any incumbrances held by mechanics and materialmen. This is made more manifest when the following provision of the building contract is considered: "It is agreed by the parties that 20 per cent. of the contract price shall be held by the owner as security for the faithful completion of the work, and may be applied under the direction of the superintendent in liquidation of any damages under this contract; also furnishing to the owner release from any liens, or rights of liens, by bond herewith annexed, within ten days from the above date, or if requested a sworn statement as required by law, before commencing work on this building." The obligation entered into by Crowdus in the building contract by which he agreed to pay the price therein specified for the erection of the building furnished the consideration for the execution and delivery of this bond. The two instruments, the contract and the bond, are practically parts of one entire transaction. The building and the lot upon which it was erected furnished the security to which Turner might look to insure the payment of the contract price, while the bond supplied the security to which Crowdus might have recourse in the event Turner failed to comply with his obligations. There is nothing in the record to indicate that the bond was to be used as a basis of credit by Turner in procuring labor and material in the construction of the building, or that any creditor furnished labor or material upon the faith of it. We have recently held, in the case of Republic Guaranty & Surety Co. v. Cameron, 143 S. W. 317, that one not a lienholder would have no right to sue on a bond of this character, and we adhere to that construction. Hence we further conclude that neither the Iron Company nor the Glass Company had any right of action on the bond in question against the Lumber Company.

[5] The assignment given by Turner on the 12th day of March, 1910, transferring to the Lumber Company the entire balance that might be due him under the contract with Crowdus, and the acceptance of the order hereinbefore referred to by the agent of Crowdus, had the effect of passing to the Lumber Company the ownership of that balance. Nothing thereafter remained in the hands of Crowdus to which the contractor might lay claim, and nothing to which subsequent liens could attach. Beilharz v. Illingsworth, 132 S. W. 106.

From what has been said it follows that the judgment of the trial court as to the Glass Company should be affirmed. In other respects the judgment should be reformed as follows: The Lumber Company should have judgment for the full amount of the

balance ($1,086.15) remaining in the hands of Crowdus after the completion of the contract and by him paid into court. The Iron Company is entitled to judgment against Turner for the full amount of its debt, but is not entitled to any part of the fund paid into court by Crowdus, nor to any judgment on the bond against the Lumber Company.

## On Motion for Rehearing.

It is clear that under the authority of Berry v. McAdams, supra, neither the Iron Company nor the Glass Company ever acquired any liens enforceable against the property of Crowdus which is involved in this suit. In that case McAdams, who had furnished material to the contractor, sought to enforce a lien against the property of the owner. The court expressly decided that the validity of his lien against the property depended upon a compliance with the requirements of the statutes enacted in pursuance of the Constitution. Upon this phase of the case the court says: "From the statement it appears that McAdams did not give written notice of his claim for material furnished to Housewright, Swasey & Co. (the owners) before they had paid to Berry (the contractor) the amount due him under the contract for building the house; and by the terms of article 3308, Revised Statutes, Housewright, Swasey & Co. were not liable to McAdams for the material furnished to the subcontractor." The court then quotes the constitutional and statutory provisions giving to materialmen the lien claimed, after which he continues: "The practical effect of article 3296, in connection with the article last quoted, is to garnish so much of the sum due from the owner of the building as may be necessary to pay for material furnished. But for the protection of the owner he and his property are exempted from liability for such claim, unless written notice be given before he pays the contractor. * * * Appellee insists that the notice required by the statute is for the benefit of the owner of the property improved, and that actual knowledge by Housewright, Swasey & Co. was a sufficient compliance with the law. The language 'but no owner or proprietor shall in any case be required to pay, nor his property be liable for any money that he may have paid to the contractor before the fixing of the lien or before he had received writen notice of the existence of the debt,' is so explicit that the court cannot construe it to mean something less. The policy of the law is to relieve the owner from demands upon the ground of actual knowledge and constructive notice, because he could rarely defend himself from such claims. Written notice is certain and definite information upon which the owner must act. McAdams did not fix his lien nor give the written notice before payment was made by Housewright, Swasey & Co. to Berry, the contractor; and is not entitled to enforce a lien upon their property for material furnished to a subcontractor." As stated in the original opinion, the facts disclosed by the record in this case show that no written notice was ever given to the owner, Crowdus, by either the Iron Company or the Glass Company, as required by the provisions of the statute; hence, under the above authority, no liens that could be enforced against the property of Crowdus were fixed by either of those creditors.

[6] But it is insisted that this suit is not an effort to recover a judgment against the owner or enforce a lien against his property, but is only a contest between claimants of a fund found to be due on the contract price and which is still in the hands of the owner. It is true that Crowdus by agreement was permitted to pay into court the balance ascertained to be due upon the contract price. This fund by that agreement was substituted for Crowdus. In order to be entitled to a participation in its distribution, the claimant must have had a valid lien that would entitle him to proceed against the property of Crowdus. Before either the Iron Company or the Glass Company can assert any right to any portion of this fund, they must first establish a claim enforceable against the property. It is only by virtue of such liens that they can have recourse to any portion of this balance due upon the contract price.

We are referred to several cases as holding that a contractor cannot assign the sum due him so as to defeat the claims of materialmen. An examination of those authorities shows that the facts there under consideration were radically different from those involved in this case, and that the rule there announced does not support the proposition here asserted. The Lumber Company at the time it took the assignment was a creditor of Turner for material which it had furnished for the construction of the Crowdus building, and was as much entitled to fix a lien against the property as any of the other materialmen. At the time it took from Turner this assignment of the balance due on the contract price Turner owed it, for material furnished, more than the amount which passed by his order. When this order which accompanied the assignment was accepted by the owner, he thereafter became bound to pay that amount of money to the Lumber Company. Crowdus had the right to pay that sum to the Lumber Company immediately upon the presentation of the order. Had this been done, there would not have remained in the hands of Crowdus any balance of the contract price to become due. If instead of making this payment in cash Crowdus accepted the order and made himself the personal debtor of the Lumber Company instead of a debtor to Turner, why should he not be held to have discharged his obligation to Turner as effectually as if he had paid the Lumber Company that much money? Efforts thereafter to establish liens

against the property would be as ineffectual as if the debt had been discharged in cash instead of by this system of novation.

The motion for rehearing is overruled.