## McGRANAHAN LUMBER CO. v. PYRAMID ASBESTOS & ROOFING CO. et al. (No. 9274.)

Court of Civil Appeals of Texas. Galveston. April 25, 1929.

Rehearing Denied May 23, 1929.

Baker, Botts, Parker & Garwood, W. A. Parish, and Rodman S. Cosby, all of Houston, for appellant.

Sam C. Polk and Ira J. Allen, both of Houston, for appellees.

LANE, J. Temple Lumber Company conveyed to B. F. Winborn lots 10 to 14, inclusive, in block 4 of Temple Terrace addition to the city of Houston, Tex., and to secure an unpaid portion of the purchase money retained a vendor's lien on the lots. Thereafter B. F. Winborn, by some arrangement or agreement with one F. S. Price, conveyed such lots to one E. Y. English for a consideration of $3,000 for each lot, the purchase price of which was evidenced by five promissory notes, each for the sum of $3,000, secured by a vendor's lien retained on each of the several lots; English assuming the payment of the indebtedness due the Temple Lumber Company.

On the 4th day of April, 1927, F. S. Price entered into five contracts with E. Y. English to construct a building on each of said lots. In consideration of the undertaking of Price to construct such buildings, English executed and delivered to Price notes for the aggregate sum of $64,300 and also conveyed to him a 99½-acre farm in Arkansas of an estimated value of $20,000. By the terms of the contract between Price and English, Price was to construct the houses and furnish the material and labor necessary for such construction in accordance with certain plans and specifications, free of all liens.

On the 9th day of April, 1927, Price, desiring to procure the necessary material and labor for the construction of the above-mentioned buildings, entered into five contracts with McGranahan Lumber Company, whereby the notes executed by English to Price were transferred by Price to McGranahan Lumber Company upon an agreement of said company to advance to Price sums from

time to time during the progress of the construction of the buildings, and in the event the full amount, evidenced by the notes, had not been advanced by the time the buildings were completed according to the plans and specifications, to pay to Price the remaining balance, and in said contract it was agreed between the parties that McGranahan Lumber Company, in consideration of the transfer of said notes, would furnish as and when needed for the construction of said buildings all the general building material necessary or required in such construction, and would furnish Price cash not to exceed $3,000 for the construction of each of such buildings. It was provided that Price was to construct and finish the buildings in accordance with his contract with English and to furnish at his own expense all material, labor, and equipment except such as was furnished by McGranahan Lumber Company, and to promptly pay for same as it became due. To secure the fulfillment of the provisions of the contract, Price also conveyed to McGranahan Lumber Company in trust the aforementioned Arkansas farm.

In constructing the five buildings to a completion, Price procured the labor and roofing material for covering same from Pyramid Asbestos & Roofing Company, and for such labor and material was indebted to said company in the sum of $1,759.89, and he also procured from Gus B. Fisk the electrical fixtures in the buildings and the labor for installing same, and owed him therefor the sum of $1,520. The two bills or accounts last mentioned were not paid when due, and the parties to whom they were due, in manner and form as required by law, sought to fix their respective liens against the buildings.

In negotiations looking to a settlement of the financial relations between McGranahan Lumber Company and Price, the lumber company, prior to October 25, 1927, prepared and presented to Price a statement of the amounts existing between them as kept by the lumber company, which in part is as follows:

7/21/1927.

F. S. Price, West Dallas.

To McGranahan Lumber Company, Dr.

| Amount due McGranahan Lbr. Co. | $39,714 92 |
|---|---|
| " " Fisk | 1,520 00 |
| " " Texas Gas Steam Heat Co. | 925 00 |
| " " Gulf Coast Tile Co. | 265 30 |
| " " Rawling Plumbing Co. | 1,525 00 |
| " " Ivey & Sholeman | 166 63 |
| " " Pyramid Asbestos Co. | 1,779 89 |
| | $45,896 74 |

Following such charges, Price was given credit for certain sums which, deducted from the charges, showed a balance due the lumber company of $2,908.95.

After such statement was furnished to Price by the lumber company, said parties, on the 25th day of October, 1927, entered into a written contract and agreement in which it was substantially recited that whereas Price had requested the lumber company to furnish him certain cash and building material to be used in constructing the English buildings and the lumber company had agreed to furnish such cash and material, and that whereas thereafter Price and the lumber company entered into a written contract dated April 9, 1927, setting forth the terms and conditions upon which such cash and material was to be furnished, and reciting that for the purpose of protecting the lumber company against loss Price had transferred and conveyed to the lumber company certain notes aggregating in value $64,300 executed and delivered by E. Y. English to Price, together with all liens securing payment thereof, and had also conveyed to the lumber company the 99½-acre farm in Arkansas, that in the event Price failed to pay the lumber company all sums the lumber company was expressly given the right to sell the Arkansas farm and out of the proceeds of such sale to pay any balance due the lumber company by Price.

It is further recited in the contract of October 25th that all the improvements which Price had contracted to construct for English had been fully completed, but that Price had failed to sell certain notes which he had agreed to sell and was still indebteded to the lumber company in the sum of $2,908.95.

After the above recitals are the following:

"Whereas, a full, final and complete settlement as between said Price and McGranahan has now been reached under the terms of which both of said parties agree that said Price is indebted to McGranahan Lumber Company in the amount of Two Thousand Nine Hundred and Eight Dollars and ninety-five cents ($2908.95), and in settlement thereof said Price has agreed to release any and all right, title, claim and equity in and to the Arkansas lands, which he might have, and convey to said McGranahan Lumber Company all right, title, equity and interest he may have in and to said lands or the proceeds resulting from the sale thereof, and McGranahan Lumber Company has agreed to release said Price from his agreement to sell and dispose of the above mentioned notes, and the parties desire to express their final and complete settlement by this instrument in writing;

"Now, therefore, for and in consideration of the premises and of the sum of Ten Dollars ($10.00) cash to each party in hand paid by the other, receipt of which is hereby acknowledged, F. S. Price, of Houston, Harris County, Texas (hereinafter sometimes called ('Price'), and McGranahan Lumber Company, a corporation organized under the laws of the State of Texas, with its principal office in the City of Houston, Texas (hereinafter sometimes called 'Lumber Company') do mutually covenant and agree as follows:

"First. Price hereby acknowledges, admits and agrees that Lumber Company has heretofore fully complied with its agreements and fully discharged all of its obligations under, the aforesaid contract of April 9, 1927, between Price and Lumber Company.

"Second. Price admits and agrees he has been unable to sell and dispose of all of the first and second lien notes executed by E. Y. English and Bertha W. English, fully described in the said contract of April 9, 1927; and further admits and agrees that as to such part of said first and second lien notes as have been sold said Lumber Company has applied the proceeds of such sale in accordance with the agreements, terms and provisions of said contract of April 9, 1927.

"Third. Price admits and agrees that at the date hereof he is indebted to Lumber Company in the amount of Two thousand nine hundred eight and 95/100 dollars ($2,908.95), representing the balance due Lumber Company for cash and/or materials advanced or furnished under said contract of April 9, 1927, and further admits and agrees that said amount is just, due and unpaid; that demand for payment thereof has been made by Lumber Company more than ten (10) days ago and same has not been paid.

"Fourth. In order to make full, final and complete settlement between said Price and Lumber Company of all liabilities and/or obligations arising out of or incident to said contract of April 9, 1927, between Price and Lumber Company, we, F. S. Price and wife, Anna M. Price, have granted, sold, conveyed assigned and transferred, and by these presents do hereby grant, sell, convey, assign and transfer to McGranahan Lumber Company all of our right, title, claim, interest, equity and estate in and to the following described personal and real property, to-wit:

"(a) Each and all of the first, second and third lien notes described herein, dated April 4, 1927, executed by E. Y. English and Bertha W. English to F. S. Price in part payment of the contract price of improvements said F. S. Price constructed for said English and wife.

"(b) The entire tract of land consisting of .99½ acres, more or less, situated in Chicot County, Arkansas, fully described in deed dated April 6, 1927, executed by E. Y. English and Bertha W. English to F. S. Price, to which reference is here made for a complete description and for all other purposes; and we, said F. S. Price and Anna M. Price, do hereby covenant and agree to and with said McGranahan Lumber Company that it may sell or otherwise dispose of said notes and lands for such consideration and upon such terms as it may deem best, and take, receive and dispose of the entire proceeds therefrom without accounting to us, or either of us, for any part thereof, we hereby relinquishing, assigning, transferring, and conveying to said McGranahan Lumber Company all right, title, interest, claim, estate and equity we may have or may be entitled to in said notes and land or any part thereof, hereby fully releasing, discharging and acquitting said McGranahan Lumber Company of and from all unfulfilled obligations undertaken by it as well as all unfulfilled agreements made and to be performed by it under the terms, provisions and conditions of the aforesaid contract of April 9, 1927,. in reference to said notes and land or the proceeds from the sale thereof, or otherwise; it being our intention to hereby vest full, absolute and unconditional title to said notes and land in McGranahan Lumber Company free, clear and discharged of any and all claims, rights, title, interest, equity, estate and/or trust we, or either of us, now have or to which we may be entitled.

"Fifth. In consideration of the conveyance, assignment and transfer contained in paragraph Fourth next above, McGranahan Lumber Company does hereby release, discharge and acquit said F. S. Price of and from all unfulfilled obligations undertaken by him and all unfulfilled agreements made and to be performed by him under the terms, provisions and conditions of the said contract of April 9, 1927, between said Price and McGranahan Lumber Company.

"Sixth. McGranahan Lumber Company does hereby release, discharge and acquit said Price from any and all liability to pay said Lumber Company the amount of $2908.95 which both parties hereto admit and agree is the true balance due at the date hereof by Price to Lumber Company for cash and/or building materials advanced and/or furnished under the said contract of April 6, 1927; said McGranahan Lumber Company, in consideration of the conveyance to it by Price and wife of the above mentioned notes and land, hereby cancels and acknowledges full payment of said balance of $2908.95 and neither said Price nor his heirs, executors or administrators shall be further liable for the payment of said amount or any part thereof.

"Seventh. This instrument is intended. to be and shall be, as between F. S. Price and wife, Anna M. Price, their heirs, executors and administrators, on the one hand, and McGranahan Lumber Company, its successors and assigns, on the other hand, a full, final and complete release,. discharge, acquittance and settlement between said Price and Lumber Company of any and all matters covered by, arising from, or which may hereafter arise from or in anywise grow out of the terms, provisions, conditions and agreements of the aforesaid contract of April 9, 1927, between said Price and Lumber Company; and after the execution and delivery of this instrument neither said Price nor Lumber Company shall have or assert any claim or

liability of any character against the other for anything covered by or arising out of said contract of April 9, 1927."

The Pyramid Asbestos & Roofing Company instituted a suit against McGranahan Lumber Company to recover its account in the amount as above shown, and Gus B. Fisk also brought a suit against said lumber company to recover the sum due him by Price. By agreement of all parties the two suits were consolidated and tried together.

The plaintiffs alleged the facts as above stated and substantially alleged that for a valuable consideration McGranahan Lumber Company had in writing agreed with Price to pay their respective accounts.

Plaintiffs also alleged in the alternative that there was an oral contract between the said Price and appellant whereby Price assigned the notes, conveyed the Arkansas farm, allowed certain discounts, and agreed to buy the lumber of appellant in consideration of appellant paying for all lumber, labor, and other building materials incident to the construction of said houses, whereby appellant became obligated to pay the debts due to appellees; that a settlement contract was made between the parties whereby their account was reduced to an account stated, wherein appellant charged to said Price the sums due to appellees and thereby assumed and became obligated to pay the amounts due appellees.

McGranahan Lumber Company answered by a general and special exception, a general denial, by a special allegation that the debts due the plaintiffs were not to be paid until sufficient proceeds were derived from the sale of certain second and third lien notes, a plea of the statute of frauds, and by a prayer that the liens claimed by the plaintiff on the buildings be removed.

Replying to such answer, the plaintiffs alleged that the lumber company had assumed payment of their respective debts and that they were estopped to deny the validity of their liens upon the buildings.

The case was submitted to a jury upon the following special issues:

No. 1. "Was it the intention of F. S. Price and the McGranahan Lumber Company, in the execution of the contract dated October 25, 1927, that the McGranahan Lumber Company would assume and obligate itself to pay for all material and labor furnished by the Pyramid Asbestos & Roofing Company and Guy B. Fisk on the two apartments and three duplexes?"

No. 3. "Was it the intention of F. S. Price and McGranahan Lumber Company, in executing the contract dated October 25, 1927, that McGranahan Lumber Company would assume and obligate itself to pay for the material and labor furnished by the Pyramid Asbestos & Roofing Company and Guy B. Fisk and other claims similarly situated, on the two apartments and three duplexes, only in

the event a sufficient sum was realized from said notes to pay said obligations?"

The jury answered the first question in the affirmative, and the second in the negative.

Upon the pleadings, evidence, and answers of the jury, the court rendered judgment in favor of the plaintiffs against the lumber company for the sums sued for by them, respectively.

McGranahan Lumber Company has appealed, and by its first proposition it insists that the court erred in refusing appellant's request for a peremptory instruction in its favor, and in submitting any issue to the jury, in that the contract of date October 25, 1927, did not impose upon it any obligation to pay the debts due by Price to the appellees, and by its second proposition that the court erred in not setting aside the answer of the jury to special issue No. 1, because such answer was contrary to the great weight and manifest preponderance of the evidence.

Neither proposition can be sustained. The undisputed evidence shows the execution of the contract, by the terms of which Price contracted to construct to completion five buildings for English, and the consideration which English agreed to pay for such construction, including the notes aggregating $64,300 in amount and the conveyance of the Arkansas farm; the contract of date April 9, 1927, between Price and McGranahan Lumber Company, by the terms of which said company agreed to finance Price in the construction of the English buildings, and by the terms of which Price agreed to transfer to the lumber company the notes executed and delivered by English to Price in trust, and to also convey to it the Arkansas farm in trust, both to secure his fulfillment of his contract with the company. The undisputed evidence shows that such transfer and conveyance were made as agreed; that thereafter the lumber company entered into the performance of its part of such contract and furnished Price certain cash and material, as provided therein, and that Price in carrying out his agreement to furnish all material for the completion of the buildings, except that furnished by the lumber company, procured from the Pyramid Asbestos & Roofing Company the roofs to the buildings and from Guy B. Fisk the construction of the electrical fixtures therein, and that the buildings were finally completed by Price in accordance with the terms of his contract with English; that after the completion of the construction of the buildings Price owned the Pyramid Asbestos & Roofing Company $1,779.89 and Guy B. Fisk $1,520 for the material and labor furnished by them in the completion of the buildings; that thereafter, in negotiations looking to a final settlement of accounts between Price and itself, the McGranahan Lumber Company made up a statement of such accounts and presented it to Price as a basis of settlement. In this statement, as shown in

that part above copied, the lumber company charged Price with the amounts due by Price to the appellees and took credit therefor as against Price; that thereafter the contract of date October 25, 1927, the material portion of which we have copied herein, was entered into between Price and the lumber company as a complete settlement of the accounts between the two parties.

That it was the intention of F. S. Price and the McGranahan Lumber Company, in the execution of the contract of date October 25, 1927, that the lumber company should assume and obligate itself to pay the claims of the appellees, as found by the jury, is, we think, amply shown by the evidence, if indeed such intention is not clearly shown by the contract of date October 25, 1927, independent of other evidence.

■ It is well settled that the intention of contracting parties must be determined from the language of the covenant considered in connection with the surrounding circumstances at the time the covenant was made; that is, from the language of the covenant itself, considered in the light of the entire context of the instrument containing it. 13 C. J. p. 543.

In Donovan v. Boeck, 217 Mo. 70, 116 S. W. 543, it is said by the Supreme Court of Missouri: "But one main rule is common to the construction of all contracts, and to it all others must give way. That rule is to get at the meaning of the contract and enforce its true intendment as judicially gathered from all its four corners. To this end it is elementary that the subject-matter of the contract, the relations of the parties to that subject-matter, and the ordinary meaning of the language used in the contract, pass in review."

McGranahan testified that the statement which the McGranahan Lumber Company presented to Price, a portion of which we have hereinbefore copied, in which it was shown that Price had been debited with the accounts of appellees and the lumber company credited therewith, was used by him, as agent for the lumber company, and Price in coming to the settlement shown by the contract of date October 25, 1927.

The contract last mentioned indicates on its face that Price owed the lumber company $2,908.95, and the statement of the account between Price and the lumber company, furnished by the lumber company as a basis of settlement, shows how such amount was arrived at, that is, it shows that by the assumption of the lumber company of the accounts due the appellees and others and charging the same against Price, he would owe the lumber company a balance of $2,-908.95.

The contention of appellant that the contract settlement entered into between it and Price of date October 25, 1927, did not impose upon it any obligation to pay the debts incurred by Price to the appellees, and therefore the court erred in not setting aside the answer of the jury to special issue No. 1, is untenable. By this contract appellant released Price from all unfulfilled obligations undertaken by him and all unfulfilled agreements made and to be performed by him under the terms, provisions and conditions of the contract of April 9, 1927. One of the obligations and agreements undertaken and to be performed by Price under the terms and provisions of the last-named contract was that he would furnish all material and labor necessary for the completion of the buildings not furnished by appellant. The contract of October 25, 1927, on its face does not disclose what these obligations were, except by reference to the contract of April 9, 1927; it does not disclose that Price, in compliance with the provisions of the last mentioned contract, did furnish through appellees the roofing and electrical fixtures for the buildings, which had not been furnished by appellant. Since, then, by the settlement contract of October 25, 1927, appellant released Price from all obligations and agreements undertaken by him under the terms of the April contract, it was admissible for appellees to show by parol evidence that in meeting his obligations and undertakings imposed upon him by the April contract Price procured the roofing and electrical fixtures for the buildings from them, and that by the contract of October 25, 1927, appellant had undertaken to assume the payment of their bills and had released Price from the payment thereof.

■ We think the evidence offered and admitted for the purposes above mentioned, to which appellant objected, was admissible (Kahle v. Stone, 95 Tex. 106, 65 S. W. 623), and that it amply supports the answers of the jury that it was the intention of Price and appellant by the contract that appellant would assume and obligate itself to pay the bills of appellees and release Price from such payment.

■ It is well settled that the assumption by one party, for a valuable consideration, of a debt due to a third person by the other party to a contract, is enforceable by the third party and does not come within the statute of frauds. S. G. Spann v. Cochran & Ewing, 63 Tex. 240; McGown v. Schrimpf, 21 Tex. 22, 73 Am. Dec. 221; Southern Surety Co. v. Solomon (Tex. Civ. App.) 4 S.W.(2d) 600; Hill. v. Hoeldtke, 104 Tex. 600, 142 S. W. 871, 40 L. R. A. (N. S.) 672.

In the Spann Case Judge Stayton, for our Supreme Court, said: "It is believed, however, that such an agreement between a debtor and a third person, made upon valuable consideration, gives to the creditor a cause of action on which he may sue and recover from the person who has so contracted to pay to him a debt originally due only by the person to whom the promise is made."

The holding in this case has been uniformly followed by our courts to the present time.

The court recites in the judgment that the plaintiffs (appellees) within 90 days from the completion of the work done and material furnished by them, respectively, in the construction of the buildings, fixed their respective liens in manner and form as required by law, and duly caused the same to be recorded, and that therefore McGranahan Lumber Company was not entitled to have such liens removed until such time as it shall have paid the debts due and owing to the appellees; but that when said lumber company shall have paid said debts it shall thereupon succeed to and become subrogated to all the rights, interests, equities, and liens held by appellees in and against the lots involved in the suit. Following such recitals, the judgment decrees that the lumber company, upon payment by it of the sums decreed to the appellees, respectively, shall succeed to and become subrogated to all the rights, liens, and equities held by each of the appellees in and against the lots.

Appellant assigns the refusal of the court to grant its prayer for a removal of the liens of the appellees as error.

■■ We think the court erred in holding, under the facts shown, that appellees had fixed their respective liens against the properties of English involved in this suit. English was not a party to the suit, and of course under such circumstances the court could not have legally rendered a judgment establishing a lien upon the properties in favor of appellees, nor could such judgment have been rendered for the further reason that English, the owner of the buildings which Price, the contractor, had agreed to construct to completion for $64,300, had, in advance of such construction and before appellees sought to file their liens, executed and delivered to Price, the contractor, his certain promissory negotiable notes aggregating in amount the sum of $64,300 in payment of the contract price, and before Price had begun the construction of the buildings and before appellees did anything to fix their liens under the law, Price, the contractor, transferred the notes executed by English as collateral to appellant to secure building material and cash to enable him to construct the buildings according to his contract with English.

While it is true that up to the 25th day of October, 1927, the notes were in the hands of appellant as collateral security only, to secure the payment of the advances made and to be made by appellant, such transfer or assignment nevertheless constituted a purchase for value, with authority to collect the same and to apply the proceeds to the debt of Price to it.

■ The execution and delivery of the notes by English to Price for the full sum which he had agreed to pay for the buildings entitled him to the same protection that he would have had had he paid the money to Price. Thelander v. Becker (Tex. Civ. App.) 199 S. W. 848; Rawles v. Perkey, 50 Tex. 316; Kauffman v. Robey, 60 Tex. 310, 48 Am. Rep. 264; Martin v. Bank (Tex. Civ. App.) 102 S. W. 131.

■ Under the facts stated, English was not indebted to Price at the time the notices of appellees of their claims were served upon him, and therefore appellees did not acquire a lien against his property by service of such notices.

■ It follows that since appellees had no lien, as asserted by them and found to exist by the court, the refusal of the court to render a decree removing the asserted liens constitutes no ground for reversal of the judgment rendered in favor of appellees against appellant.

Appellees have sought and obtained a judgment against appellant only for their respective accounts, and by the terms of the judgment any apparent liens held by them will be automatically removed upon the payment of the judgments rendered in appellees' favor.

In view of the holdings in the cases cited, and the evidence, we do not think the court erred in refusing to decree a removal of appellees' liens as prayed for by appellant.

Having reached the conclusions herein expressed, it becomes our duty to affirm the judgment, and it is accordingly so ordered.

Affirmed.