**E. NELSON MFG. & LUMBER CO. et al. v. RODDY et al.**

No. 7512.

Court of Civil Appeals of Texas. Austin.

Nov. 19, 1930.

Rehearing Denied Dec. 23, 1930.

J. B. Talley, of Temple, for appellant C. W. Barrett & Son.

Trippet, Richey & Sheehy, of Waco, for appellants E. Nelson Mfg. & Lumber Co., C. H. Ruebeck & Co., and Acme Brick Co.

Sleeper, Boynton & Kendall, of Waco, for appellant Central Texas Iron Works.

Tom P. Scott, of Waco, for appellant W. A. Haubold.

Jno. B. Daniel, of Temple, for appellant Cox & Whisennand.

Thompson, Knight, Baker, & Harris, of Dallas, for appellee American Employers' Ins. Co.

A. L. Curtis, of Belton, and Walker Saulsbury, and Cox & Brown, all of Temple, for appellees S. E. and Dora Roddy.

Cox & Brown, of Temple, for appellee City Nat. Bank of Temple.

BLAIR, J.

By a mechanic's lien contract, dated May 30, 1928, S. E. Roddy and wife, as owners, contracted with Ray Phillips, as contractor, to construct an apartment house on a lot which was their homestead, and executed a note for $31,250, in payment of the improvements, payable on estimates of 80 per cent. of work and material incorporated in the building, until $11,250 was paid, and the balance of $20,000 was payable when the building was completed according to the plans and specifications, and upon the contractor furnishing satisfactory proof to the owners that all labor and (or) material used had been paid for. The contract provided that the note and lien might be assigned by the contractor; and attached to the contract was an assignment in blank of the note and mechanic's lien which was executed and acknowledged subsequently to the execution of the contract, but on the same date; and later the name of the City National Bank of Temple, hereinafter called bank, was written in as assignee; and the mechanic's lien contract and the assignment of the note and lien were filed for record on June 6, 1928, and duly recorded June 8, 1928, in the mechanic's lien records of Bell county, Tex., where the property was situated; and to this assignment Roddy and wife agreed.

The contract obligated the contractor to execute a bond for the faithful performance

of the covenants and conditions of his contract; and he executed the bond with American Employers' Insurance Company as surety, hereinafter called surety. The contractor proceeded with the construction of the building, and was paid $11,250 of the contract price on estimates of labor and material incorporated in the building, and the bank had advanced him $11,896.12 on its purchase price of the $20,000 balance of the installment note when he abandoned the construction of the building on October 20, 1928; and all of which matters and transactions were prior to notice to owners of any claims for labor and (or) material used in the building. The owners then requested the surety to complete the work, and, upon its refusal, requested the bank to proceed with the construction work, which it did until it had expended $7,824 additional, or a total of $19,720.18, on the building contract, and the owners expended the additional necessary amount of $3,629.43 to finish the building in accordance with the contractor's obligation.

Appellant, E. Nelson Manufacturing & Lumber Company, hereinafter called plaintiff, sued the contractor, the owners, the bank, and the surety on the contractor's performance bond for certain material furnished the contractor in the construction of the building, alleging that it had given proper notice to the owners to fix a statutory materialman's lien on the property, and that the surety bond inured to its benefit; and numerous others intervened, hereinafter called interveners, under similar pleadings to plaintiff's, seeking to recover for labor and (or) material used to construct the building. The surety answered that its bond was not executed for the benefit of plaintiff and interveners; and, as regards the bank, alleged that it had a prior assignment of the contractor's interest in the contract. The bank and the owners answered that the assignment of the $20,000 balance due on the note and lien securing it constituted payment of the contract price by the owners in so far as concerns any right of the plaintiff, the interveners, or the surety, each being charged with actual or constructive notice of the assignment before furnishing any labor and (or) material, or acquiring any right in the premises.

A trial to the court without a jury resulted in judgment for plaintiff and interveners against the contractor for the amount of their respective claims, that the surety bond did not inure to the benefit of the plaintiff and interveners, and that the payment by the owners in the course of construction of the building of the $11,250, and the assignment with the owner's consent of the $20,000 balance of the note and lien before owners' notice of plaintiff's and interveners' claims for any labor and (or) material, constituted payment by the owners of the entire contract price of the building, so as to preclude plaintiff and interveners with record or actual notice of the assignment from thereafter fixing any laborer's or materialman's liens on the property under the statutes; hence this appeal by plaintiff and interveners, raising several questions for determination.

The trial court construed the bond not to "inure to the benefit of either the plaintiff or the interveners, or either of them, because it does not so provide; and that there are no expressions or covenants in the contract which warrant the construction that it was intended that either the plaintiff or any of the interveners have any right of action on the bond." We do not sustain this conclusion, under the rule that, when the bond is construed in connection with the provisions of the contract it was given to secure, and the attending circumstances, it is reasonably clear that the parties intended that it should inure to the benefit of all who furnished labor and (or) material to construct the building.

The contract obligated the contractor to execute the bond payable to the owners, conditioned for the faithful performance of the covenants and conditions of the contract, which included (a) the furnishing by the contractor of all labor and material necessary to construct the building; and (b) the furnishing by contractor to the owners, after the completion of the building and before the $20,000 balance on the $31,250 note would become due and payable, "proofs satisfactory * * * that all labor and material bills for labor and material entering into the work have been paid in full." The contract authorized the contractor to assign the note and lien given in payment of the improvements; which he did in blank on the day he executed the contract; and he furnished surety with a copy of both the contract and the assignment of the note and lien with his application for the bond. The name of the assignee bank was inserted in the original assignment the next day, May 31, 1928, and, although the bond bears date of May 30, 1928, it was in fact executed and delivered three or four days later. Now, with these facts before it, the surety executed and delivered the bond, which contained the following as to its purposes and conditions:

"Now, therefore, for the purpose of securing the said S. E. Roddy and Mrs. Dora Roddy, their heirs or assigns in the true and faithful performance of said contract together with all of the covenants and obligations of the said Ray Phillips, as contractor, therein set forth and to guarantee the true and faithful performance of said contract and the payment of all claims of each and every subcontractor, workman, laborer, mechanic and furnisher of material unto the said Ray Phil-

lips as contractor, arising or growing out of said contract, their heirs or assigns, as their interest may appear, we, the said Ray Phillips, as principal, and the other subscriber hereto as surety, acknowledge ourselves indebted to and bound to pay to the said'S. E. Roddy and his wife, Mrs. Dora Roddy, owners, their heirs, executors, administrators, or assigns, the sum of Fifteen Thousand ($15,000.00) Dollars, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors and administrators jointly and severally by these presents.

"The conditions of this bond, however, are such that if the said Ray Phillips as contractor shall truly and faithfully do and perform all and every the covenants and conditions of said contract and herein promised by him to be done, kept and performed, and shall truly and faithfully pay all claims of each and every sub-contractor, workman, laborer, mechanic and furnisher of material growing or arising out of said contract, then and in such event this obligation is to become null and void and of no further force or effect; otherwise to remain in full force and effect. This obligation or any claim arising hereon may be enforced at Temple, Texas."

 The authorities are agreed that, in construing bonds of this character, the intention of the parties must control as to whose benefit it inures, which intention must be gathered from the bond, the contract which it guarantees, and the attending circumstances known to the parties at the time the bond was executed. The first evidence that the parties intended that this bond should inure to the benefit of all laborers and materialmen is the contract provision for the assignment of the note and lien. The parties knew as a matter of law that any assignment of the note and lien by the contractor would preclude laborers and materialmen who thereafter furnished labor and (or) material with notice of the assignment from fixing a statutory lien on the property; and they also knew that, as between the owners, the contractor, the assignee, and all laborers and materialmen with notice of the assignment of the note and lien executed in full payment of the building, the owners had thereby paid the entire purchase price of the building, and that they would not be liable for any additional amount. The surety knew that the contractor had assigned the note and lien in blank, and inquiry would have revealed the name of the assignee before surety executed the bond. The bond was therefore no protection or benefit to the owners as regards claims of laborers and materialmen who furnished labor or material after notice of the assignment, because they were not liable for them; and, unless the bond was intended for the benefit of all laborers and materialmen, the provision, "to guarantee payment of all claims of each and every sub-contractor, workman, laborer, mechanic, and furnisher of material," was purposeless and meaningless. In this connection, it may also be observed that the bond purpose and condition was not to repay the owners for any sums of money which they might be compelled to pay other persons on account of work and labor done or material furnished, but the purpose and condition of the bond was to guarantee that the contractor would "pay all claims of each and every sub-contractor, workman, laborer, mechanic and furnisher of material growing or arising out of said contract," and this language of the bond distinguishes this case from most of the cases cited by surety in its brief, and brings this case within the general rule that a bond inures to the benefit of laborers and materialmen when it reasonably appears from the language of the bond and the contract it secures, and the attending circumstances, that the parties so intended. Smith v. Fidelity & Deposit Co. (Tex. Com. App.) 280 S. W. 767; Mosher Mfg. Co. v. Equitable Surety Co. (Tex. Com. App.) 229 S. W. 318; Trinity Portland Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483, 485; Koehler v. Standard Sanitary Mfg. Co. (Tex. Civ. App.) 230 S. W. 785; United States F. & G. Co. v. Thomas (Tex. Civ. App.) 156 S. W. 573; Republic Guaranty & Surety Co. v. Cameron & Co. (Tex. Civ. App.) 143 S. W. 317; National Bank of Cleburne v. G., C. & S. F. R. Co., 95 Tex. 176, 66 S. W. 203; General Bonding & Casualty Ins. Co. v. Waples Lbr. Co. (Tex. Civ. App.) 176 S. W. 651; Oak Cliff Lbr. Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429.

The second evidence that the parties intended that the bond should inure to the benefit of all laborers and materialmen is the contract provision that contractor should furnish to the owners, after completion of the building and before the $20,000 balance on the $31,250 note would become due and payable, "proofs satisfactory * * * that all labor and material bills for labor and material entering into the work have been paid in full." The bond stipulates that surety guarantees that the contractor "shall truly and faithfully pay all claims of each and every sub-contractor, workman, laborer, mechanic, and furnisher of material growing or arising out of said contract." In the case of Trinity Portland Cement Co. v. Lion Bonding & Surety Co., supra, the Commission of Appeals construed a similar provision in a contract to show that the parties intended to contract for the benefit of laborers and materialmen. Because of the similarity of the contract provisions in the two cases, we quote at length from that case, as follows:

"In quoting the second stipulation of the contract, hereinbefore quoted in full, the

Court of Civil Appeals omitted the last clause providing for a showing that 'all labor and material had been paid for.' We attach much importance to these words. To our minds they are very significant: First, because they make clear the purpose of the stipulation made and the bond contracted to be made. * * *

"Not content with that formal, yet comprehensive, declaration of the purpose of the required and contemplated bond, it is further recited that the bond should be executed ('for the faithful performance of this contract') as to guaranty 'that all labor and materialmen liens shall be paid by the said contractor.'

"Unless the bond was intended to protect those to whom it could afford protection, and whom the statute was intended to protect, the making of the contract, and making the bond a few days later, of which the contract was a part, were, except in so far as the bond operated to protect the city, idle and futile formalities.

"From the analysis of the case of Lyman v. City of Lincoln, 38 Neb. 794, 57 N. W. 531, as made by counsel for plaintiff in error, it appeared to us to be a case peculiarly applicable to the instant case, and we have carefully examined it. The contract in that case contained the following stipulation:

" 'The contractor shall file with the board of public works receipts of claims from all parties furnishing materials and labor in the construction of such engine houses before the final estimate is paid, and the work accepted from the hands of the contractors. * * *

"The court says:

" 'The clause, "The contractors shall file with the board of public works receipts" of claims from all parties,' etc. 'found in the contract between the city and (the contractors) liberally and fairly construed, means that Layne & Sweet (the contractors) promised the city that they would make payment to those who furnished them material or labor on said buildings; and the sureties, in their bond, guaranteed that Layne & Sweet would perform this promise.' * * *

"It will be observed that, while there was no statute in Nebraska such as there is in Texas, yet the court, construing a contract and bond strikingly similar, if not substantially the same as in this case, held that the bond inured to the benefit of the materialmen."

It is true that the commission was construing a statutory bond, but, as pointed out in the quotation, the same rule of construction applies in the construction of a common-law bond.

There is no controversy as to the amount of the respective claims of plaintiff and interveners; in fact, they are established by the judgments in favor of plaintiff and interven-ers against the contractor herein; and we therefore reverse the judgment of the trial court holding that the bond did not inure to the benefit of plaintiff and interveners, and here render judgment for plaintiff and interveners against surety for the amount of their respective claims, as established by their respective judgments herein against the contractor.

■ Plaintiff and all interveners, except Cox & Whisennand, a copartnership, who furnished the plumbing work and material in the building, gave written notice to the owners of their claims within the time and in the manner prescribed by law for perfecting them as liens, if they could be so perfected. But the fact that this intervener did not give notice to the owners of its claim is not material, because, as hereinabove pointed out, the obligation of the surety on its bond was "to guarantee payment of all claims of each and every subcontractor, workman, laborer, mechanic, and furnisher of material unto said Ray Phillips as contractor, arising or growing out of said contract," whether or not the owners were liable for the payment of such claims, and which provision of the bond we have construed as evidencing the intention of the parties that it should inure to the benefit of laborers and materialmen.

■ But the surety contends that, if this court should hold it liable on its surety bond, which we do, then its assignment of any funds due the contractor under the contract is prior and superior to the assignment to the bank. This contention is based upon the fact that in making his application for the bond the contractor assigned the contract price of the building to surety, which the surety now claims the benefit of to the extent of any amount it may be compelled to pay to laborers and materialmen. There is no merit to this contention, because the undisputed evidence shows that attached to the contractor's application for the bond was a copy of his assignment in blank of the note and lien given in payment of the improvements; and also attached was a copy of the mechanic's lien contract which authorized the contractor to assign the note and lien, and which contained other provisions showing what rights an assignee thereof would acquire. This assignment was duly acknowledged May 30, 1928, and on May 31, 1928, or a day or two thereafter, the name of the assignee bank was inserted. The date of the contractor's application for the bond, which contained his assignment of the contract price of the building to surety, was May 31, 1928; and the evidence is undisputed that the bond was executed and delivered three or four days later. The surety made no inquiry concerning the assignment in blank of the note and lien, which was attached to the application. If it had done so, the assignee would have been

revealed before it executed the bond, although the contractor did not know to whom he would assign the note and lien when the assignment in blank was executed, but did know that he would be compelled to make the assignment in order to finance the construction of the building. The bank recorded its assignment, but surety did not record its assignment, and the bank knew nothing of surety's assignment until this suit was filed. The facts recited above estop surety from now asserting any priority of right under its alleged assignment of the contract price of the building, either as against the bank or the owners.

Plaintiff interveners, and surety also contend that plaintiff and interveners had a prior right to be paid for their labor and (or) material used in the building out of the $20,000 balance due on the mechanic's lien note assigned to the bank. This contention is based upon two grounds, as follows: (1) Because the bank does not hold an unconditional obligation of Roddy and wife to make any payment to it, but only holds an equitable assignment of the nonnegotiable mechanic's lien note, which assignment is not superior to the rights of those who furnished the labor and material to construct the building; (2) because the mechanic's lien contract and note assigned to the bank are conditioned that laborers and materialmen shall be paid first, and that the bank took the assignment subject to that condition, which inured to the benefit of laborers and materialmen.

■■ We do not sustain the contention. With respect to the first ground, the evidence is undisputed that the owners received no notice of the claims of plaintiff and interveners until they had paid the $11,250 installment due on the note on estimates of labor and material incorporated in the building, and after they had ratified and accepted the assignment by the contractor to the bank of the balance due on the note given in full payment of the building, and after the contractor had abandoned his building contract. The evidence is also undisputed that the assignee bank recorded its assignment of the note and lien before any labor or material had been furnished by plaintiff and interveners, and had advanced $11,896.12 on the building contract before the contractor abandoned the project; and neither plaintiff nor interveners even notified the bank of their claims; and the bank, as assignee of the note and lien, with the aid of the owners, finished the building. The law is well settled that, until notice is given by laborers and (or) materialmen who furnish labor and (or) material to a contractor obligated to furnish same under a building contract, the owners may make payments on the contract, or may accept assignments of future estimates to become due on the building, or may obligate themselves to

assume any indebtedness or obligation of the contractor; and that such prepayments or assumptions of liability on the part of the owners take precedence of all claims of laborers and materialmen who subsequently give notice of their claims to the owners. Gordon-Jones Const. Co. v. Welder (Tex. Civ. App.) 201 S. W. 681, 685; articles 5463 and 5469, R. S. 1925; Beilharz v. Illingsworth, 62 Tex. Civ. App. 647, 132 S. W. 106; Campbell v. Teeple (Tex. Civ. App.) 273 S. W. 304; Cramer v. Dallas Lumber Co. (Tex. Civ. App.) 283 S. W. 596, 597; Thelander et ux. v. Becker (Tex. Civ. App.) 199 S. W. 848; McGranahan Lbr. Co. v. Pyramid Asbestos & Roofing Co. (Tex. Civ. App.) 18 S.W.(2d) 224; Garvin v. Armstrong Bros. (Tex. Civ. App.) 20 S.W. (2d) 358; Lyon-Gray Lbr. Co. v. Wichita Falls B. & Tile Co. (Tex. Civ. App.) 194 S. W. 1167; Rotsky v. Kelsay Lbr. Co. (Tex. Com. App.) 228 S. W. 558; Clark & Clark v. Gillespie, 70 Tex. 513, 8 S. W. 121; First Nat. Bank v. Lumber Co., 110 Tex. 162, 217 S. W. 133; Campbell v. Grant Co., 36 Tex. Civ. App. 641, 82 S. W. 794.

In Cramer v. Dallas Lumber Co., supra, Justice Fly for the San Antonio Court of Civil Appeals says:

"When J. B. King executed the note to Lange & Trumpf for the sum charged for the erection, he had paid for the house, and the note became commercial paper, and the contractors had the right to sell the note to any one who desired to buy it. * * * The statute giving authority to the materialman to fix a lien for material furnished does not create a debt against the owner of the property, but merely appropriates so much as may be due on the improvements to the payment of the debt for the material. * * *"

To the same effect are the cases of Campbell v. Teeple; Thelander v. Becker; and Garvin v. Armstrong Bros., supra; and in Gordon-Jones Construction Co. v. Welder, supra, the court held as follows:

"'Until notices of subcontractor's claims are given to owner, in accordance with statute, he and contractor may make such settlements as they choose, and owner may make prepayments upon the contract, or may accept assignments of any future estimates to become due upon the same, or may obligate himself to assume any indebtedness of contractor to others, and should he do so, then such prepayments, assignments, or assumption of liability to others take precedence over all subcontractor's claims, of which the owner had only subsequent notice. * * *'

"In the present case the assignment of estimates by the Gordon-Jones Construction Company to the Victoria National Bank and its acceptance by Welder created an obligation upon the owner to pay said fund to the bank and extinguished the contractor's right thereto; therefore this accepted transfer

took precedence over all claims of which the owner at the date of the acceptance of the transfer to the bank did not have statutory notice."

■■ It may also be noted in this connection that the bank acquired the $20,000 balance due on the mechanic's lien note as an innocent purchaser for value, without notice, of the claims of plaintiff and interveners, and in fact registered its assignment as required by article 6627, R. S. 1925, before plaintiff or interveners furnished any labor and (or) material to construct the building; and the contract also specifically authorized such assignment, which contract was recorded at the same time. This statute has been held to apply to mechanic's and materialman's liens as well as to ordinary deeds of trust and conventional mortgages; and certainly under this statute plaintiff and interveners, with record notice that the contractor had assigned the entire contract price of the building to the bank, cannot assert a prior lien thereto for labor and (or) material thereafter furnished in the construction of the building. Garvin v. Armstrong Bros., supra. Nor could plaintiff and interveners compel assignee bank to take a piecemeal assignment of the note and lien; but it became vested with valid title to the remainder of the contract price evidenced by the note and lien assigned, subject only to such defenses as existed between the owners and the contractor, and to which rights or defenses plaintiff and interveners are not in privy.

■■ Nor do we sustain the second ground that the mechanic's lien note was intended to inure to the benefit of laborers and materialmen, because the contract provided that it was payable when the improvements were completed, and when proofs satisfactory to the owners of the payment of all labor and material claims had been furnished by the contractor. The contract authorized the assignment of this note and the lien securing it by the contractor to any person who desired to purchase it. The contract did not provide that the assignee would thereby become liable for any claims for labor and (or) material going into the building. There was no privity of contract between such an assignee and the laborers and (or) materialmen furnishing labor and (or) material to the contractor for the improvements; and there is no language in the contract, the note, or the assignment of the note and lien which would authorize the construction, in the light of attending circumstances, that the owners, the contractor, and the assignee bank intended that the note should inure to the benefit of laborers and (or) materialmen.

The contrary was clearly the intention of the parties. The assignment was immediately recorded as notice to the world of its provisions and purposes. There would have been no reason for the assignment, unless it was for the purpose of obtaining money with which to pay for labor and material going into the building as the work progressed. It was recorded before work began on the building, and all laborers and (or) materialmen thereafter furnishing labor and material for the construction of the building knew as a matter of law as well as a matter of practice that the assignment was for the purpose of obtaining money with which to carry out the building contract, which was done to the extent above indicated. It was also undisputed that the owners accepted and consented to the assignment for the purpose of authorizing the assignee to advance money to the contractor with which to construct the building. The evidence was also undisputed that neither the bank nor the owners knew of or made any contract with plaintiff and interveners with reference to furnishing to the contractor labor and (or) material with which to construct the building. The contract provided that failure to complete the improvements by the contractor would not defeat the debt and lien, but that same would exist in favor of the contractor, "his heirs and assigns," for the "contract price, less such an amount as would be reasonably necessary to complete said improvements," which provision shows the intention of the parties as recognizing the note and lien as payment of the contract price of the building, and that the assignment of the note and lien was for the purpose of securing funds with which to construct the building. The contract also provided that, should the contractor assign the note and lien, "the assignee shall be subrogated to all liens on the property, securing the same." So it is clear that the provision that the notes would become payable only when proofs satisfactory were furnished by the contractor of payment of all claims for labor and (or) material was intended for the sole benefit of the owners as between them and the assignee of the note and lien, which provision the owners clearly waived when they consented to, and accepted, the assignment to the bank; and there was no privity of the assignment contract and the note and lien assigned as between the assignee bank and plaintiff and interveners; and their rights were purely statutory, which they failed to perfect before the owners paid the entire contract price of the building. Thompson v. Kleinman (Tex. Civ. App.) 259 S. W. 593; First Nat. Bank of Paris v. Lyon-Gray Lbr. Co., 110 Tex. 162, 217 S. W. 133.

We reverse and render in part and affirm in part the judgment of the trial court, in accordance with this opinion.

Reversed and rendered in part, and in part affirmed.

### On Motion for Rehearing.

As regards the claim that the assignment of the contract price of the building to appel-

lant should be given priority over the bank's assignment under the rule that as between equitable assignments the "first in time is the first in right," we wish to give additional reasons to the reason stated in our opinion why it is not so. The assignment to appellant was a part of the contractor's application for his bond, which contained the following stipulations:

"This assignment shall be in full force and effect, as of date hereof, should the undersigned fail, refuse or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on the part of the undersigned under the said contract."

The application further stipulated that the contractor "does hereby assign, transfer and convey to said corporation all the deferred payments, and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach or default, or that may thereafter become due and payable to said undersigned on account of said contract. * * *"

This was merely a conditional assignment, conditioned upon some future breach of the contract by the contractor, and it became effective only in the event of some breach of the contract, which the bond guaranteed would not happen. This left the contractor and owners free to make any settlement of the contract price of the building agreeable to themselves and made in good faith. The contract provided that the note and mechanic's lien securing it might be assigned by the contractor. He assigned them to the bank with the consent of the owners, it being mutually agreed that such was necessary in order that the bank might advance the money to contractor with which to pay for labor and material going into the building. This assignment was made prior to any breach of the contract which would make surety's assignment effective, and of which assignment in blank surety had notice before it executed the bond. The evidence is undisputed that neither the bank nor the owners knew of surety's assignment until this suit was filed, which, of course, was after the building had been completed and after the note and lien assigned to the bank had become unconditional obligations of the owners to the bank. Thus the bank's assignment became not only an equitable but a legal assignment of the balance due on the building contract before it had any notice of surety's assignment, and the rule, "first in time is first in right," as between mere successive equitable assignees, has no application.

Nor is the general rule that "first in time is first in right" as between successive equitable assignees of the price of an executory contract to construct a building applicable where the contract price is to be paid upon completion of the building, and where it becomes necessary for the contractor and owners to make other arrangements as to payment of the contract price in order that the contractor may proceed with the construction work. In such cases the following rule announced by Judge Key of this court, in the case of Peden Iron & Steel Co. v. McKnight, 60 Tex. Civ. App. 45, 128 S. W. 156, 159, is applicable:

"It is true that some authorities express the rule to the effect that, after notice of the assignment, the debtor deals with the assignor at his peril, and can do nothing that will adversely affect the interest of the assignee. If intended to apply to all cases and to admit of no exceptions, that statement of the rule is too broad. It should be qualified by the statement that, when the existence of the assigned fund is dependent upon performance by the assignor of an executory contract, the anticipatory debtor may, at any time, do whatever reasonably appears to be necessary to enable the assignor to perform the contract."

But if, under any facts disclosed by the record, which we do not concede, surety's assignment could be held to have been executed or created prior to the bank's assignment, still it cannot be given priority, because surety failed to record or otherwise notify the bank of same, as required by article 6627, and as between them surety's assignment is void. The building had been completed and the note and lien had become absolute and unconditional obligations before either the owners or the bank had any notice of surety's assignment. The bank was therefore an innocent purchaser of the note and lien for value without any notice of surety's assignment of the contract price of the building and the lien securing same. Surety's assignment was not shown to have been acknowledged, and it was not recorded. The bank's assignment was duly acknowledged and recorded, as required by the statute, which renders void all instruments affecting title of or concerning real estate "as to all creditors and subsequent purchasers for a valuable consideration without notice," unless such instruments are properly recorded. This statute has been held to apply to mechanic's and materialmen's liens. Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234; Scottish-American Mortgage Co. v. Scripture (Tex. Civ. App.) 40 S. W. 210; Heidenheimer v. Stewart, 65 Tex. 321; Graves v. Kinney, 95 Tex. 214, 66 S. W. 293; Spencer v. Jones, 92 Tex. 519, 50 S. W. 118, 71 Am. St. Rep. 870; Fennimore v. Ingham (Tex. Civ. App.) 181 S. W. 513; King v. Bank, 30 Tex. Civ. App. 92, 69 S. W. 978; Drumm Comm. Co. v. Core, 47 Tex. Civ. App. 216, 105 S. W. 843; Busch v. Broun (Tex. Civ. App.) 152 S. W. 683; Thomas v. Bank, 60 Tex Civ. App. 133, 127 S. W. 844; Garvin v. Armstrong Bros. (Tex. Civ.

App.) 20 S.W.(2d) 358. And, as was held in the case of Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, that as between "innocent purchasers of a lien affecting the title to land" the one purchasing first and failing to comply with the registration statute must suffer the loss occasioned by his negligence rather than the subsequent purchaser without notice, and who made no such default. King v. Bank, 30 Tex. Civ. App. 92, 69 S. W. 978; Drumm Comm. Co. v. Core, 47 Tex. Civ. App. 216, 105 S. W. 843, 845; Rogers v. Houston, 94 Tex., 403, 60 S. W. 869; Gamble v. Martin (Tex. Civ. App.) 151 S. W. 327; Barnes v. Jamison, 24 Tex. 362; Baldwin v. Root, 90 Tex. 546, 40 S. W. 3; Spencer v. Jones, 92 Tex. 519, 50 S. W. 118, 71 Am. St. Rep. 870; Fennimore v. Ingham (Tex. Civ. App.) 181 S. W. 513; Busch v. Broun (Tex. Civ. App.) 152 S. W. 683; Thomas v. Bank, 60 Tex. Civ. App. 133, 127 S. W. 844.

The motion is overruled.

Overruled.